# United States Court of Appeals for the Federal Circuit

2007-1327

TRIMED, INCORPORATED,

Plaintiff-Appellant,

v.

STRYKER CORPORATION,

Defendant-Appellee.

Lee F. Grossman, Grossman Law Offices, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were Mark M. Grossman and Jeffrey M. Drake.

Robert A. Surette, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Gregory J. Vogler and Stephanie F. Pall.

Appeal from: The United States District Court for the Central District of California

Judge Manuel L. Real

# United States Court of Appeals for the Federal Circuit

2007-1327

TRIMED, INCORPORATED,

Plaintiff-Appellant,

v.

STRYKER CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court for the Central District of California in case no. 06-CV-1918, Judge Manuel L. Real.

_____

DECIDED:  January 29, 2008

_____

Before LINN, DYK, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Plaintiff-appellant TriMed, Inc. (TriMed) appeals the summary judgment of noninfringement granted in favor of defendant-appellee Stryker Corporation (Stryker) by the United States District Court for the Central District of California.  Because the district court construed the relevant claim language incorrectly, we reverse.

## BACKGROUND

TriMed owns U.S. Patent No. 5,931,839 ('839 patent), which pertains to an implantable device for fixing bone fractures using screws, pins, and a plate with holes on one end for receiving screws and on the opposite end for receiving pins.  In one embodiment of the '839 patent, the plate is fitted across a bone fracture such that the pin holes are positioned over the fractured bone fragment and the screw holes are

positioned over the stable bone fragment. The screws affix the plate to the stable bone fragment. The pins fixate the fracture by passing through the pin holes of the plate, traversing the fracture such that the pins penetrate the fractured bone fragments and embed in the stable bone fragment. Figure 5 of the '839 patent illustrates this embodiment:



Stryker manufactures and sells implantable wrist fracture fixation devices that also involve screws, pins, and plates with holes. The following x-ray depicts the implantation of one such device:



As shown, Stryker's plate has been implanted on the distal radius. Pins have been inserted distally through the fractured bone fragment at an angle into the stable bone fragment. Screws have been inserted proximally to secure the plate to the stable bone

fragment.

TriMed sued Stryker, alleging that Stryker's wrist fracture fixation devices infringe

the '839 patent. Claim 1, the only independent claim at issue, reads as follows:

> An implantable device for fixation of at least one fractured bone fragment
> to a stable bone fragment, said implantable device comprising an
> implantable plate having opposite end portions, fastening means for
> securing one end portion of said plate to stable bone, at least one fixation
> pin for penetrating said at least one fractured bone fragment, and
> traversing a fracture for entering the stable bone fragment and for being
> secured therein at a stable fixation site at a far end of said fixation pin, the
> opposite, near end of said pin being adapted for extending from the
> fractured bone fragment, said near end of said pin being engageable in
> one of a plurality of holes in the other end portion of the plate, <u>said holes
> in said plate providing means for allowing the pin to slide axially therein
> but preventing compression across the fracture, and stabilizing said near
> end of the pin against displacement in the plane of the plate</u>.

'839 Patent col.6 ll.17-32 (emphasis added).

Stryker moved for summary judgment of noninfringement, asserting that the

phrase, "said holes in said plate providing means for allowing the pin to slide axially

therein but preventing compression across the fracture, and stabilizing said near end of

the pin against displacement in the plane of the plate," is a means-plus-function

limitation governed by 35 U.S.C. § 112 ¶ 6. Stryker argued, based upon two separate

grounds, that this means-plus-function limitation is not present in the accused devices.

First, according to Stryker, the language at issue requires surgeons to perform the

functions of "allowing the pin to slide axially therein but preventing compression across

the fracture" and "stabilizing said near end of the pin against displacement in the plane

of the plate." Because, Stryker contended, its accused devices do not by themselves

perform the claimed functions and that it does not supply the surgeons who may use the

devices to perform the claimed functions, it cannot be held liable for infringement.

Second, Stryker argued that the only corresponding structures disclosed in the specification of the '839 patent for performing the claimed functions are "hole[s] plus some other structure." As the accused devices contain holes and nothing more, Stryker asserted that it did not infringe on the '839 patent.

Adopting Stryker's proposed claim construction and signing without any modification Stryker's Rule 56 Statement of Facts and Conclusions of Law, the district court entered summary judgment of noninfringement against TriMed. TriMed timely appealed, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

The task of determining whether the relevant claim language contains a means-plus-function limitation is, as with all claim construction issues, a question of law that we review de novo. Cybor Corp. v. FAS Techs. Inc., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc). Use of the word "means" in claim language creates a presumption that § 112 ¶ 6 applies. See Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1583 (Fed. Cir. 1996). If, in addition to the word "means" and the functional language, the claim recites sufficient structure for performing the described functions in their entirety, the presumption of § 112 ¶ 6 is overcome—the limitation is not a means-plus-function limitation. See Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1360 (Fed. Cir. 2004) ("[T]he fact that a particular mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)."); Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1427-28 (Fed. Cir. 1997). Sufficient

structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure. See Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1376 (Fed. Cir. 2003); see also Envirco Corp. v. Clestra Cleanroom, Inc., 209 F.3d 1360, 1365 (Fed. Cir. 2000) (finding that "baffle means" defeated the § 112 ¶ 6 presumption because "the term 'baffle' itself imparts structure").

The district court erred in concluding that the language at issue in claim 1 was means-plus-function language that invoked § 112 ¶ 6. To be sure, the claim discloses functions for the holes—allowing a pin to slide axially through the pin plate while preventing compression across the bone fracture, and stabilizing the exposed end of the pin against displacement in the plane of the plate. As our precedent makes clear, the presence of the word "means" and the articulation of a function is not the end of the inquiry. Just as clearly, the claim articulates the structure for performing the claimed functions—the holes. The functional language defines the size and shape of the claimed holes. The interior of the holes must be shaped to allow pins to slide through axially while the boundaries of the holes must be sized appropriately to hold the pins in place and limit their movement across the plane of the plate. The claim language makes clear that the structure for performing these functions is the holes themselves.

Since the claim language clearly identifies the structure for performing the functions in claim 1, it was unnecessary and inappropriate for the court to employ § 112 ¶ 6 and to hold that there must be a structure in addition to the holes (such as a slot) for performing these functions. Even if we were to construe this as a § 112 ¶ 6 claim, the

specification discloses an embodiment that has precisely the same structure that is found in the accused devices. The specification states: "In one embodiment the pins 8 are bent over the superficial surface of the plate 1 as stated above." '839 Patent col.5 ll.24-25. The reference is to an earlier part of the specification, which stated that: "The rigidity of pin fixation of the fracture fragment is considerably improved by having it pass through one of the small holes 3 and possibly a tight slot 4 in the pin plate 1 which has been secured to the proximal fragment 10. After the pin 8 is placed, it can be bent over the superficial surface of the plate 1 to keep it from migrating."[1] Id. col.4 ll.56-61.

Stryker argues that the prosecution history of the '839 patent dictates that the claim limitation at issue does not recite sufficient structure for performing the described functions and instead must be read as requiring "hole[s] plus another structure." Specifically, Stryker points to an interview summary that states, "Agreement was reached that the expression of [the configuration of the pin to be attached to the plate in a sliding manner that prevents compression across the fracture] in a means-plus-function format and better defining the holes of the plate would distinguish over the prior art of record."[2] Because TriMed subsequently amended claim 1 to include the claim language in dispute, Stryker contends that the language must be construed as a means-plus-function limitation.

---

[1] Additional structures for performing the claimed functions beyond mere holes, such as slots and other means for snap engagement of the pin to the plate, are recited in dependent claims not discussed in this opinion. See, e.g., '839 Patent col.6 ll.36-39.

[2] A statement that use of means-plus-function language would help overcome prior art does not magically transform language that clearly does not meet our legal tests for § 112 ¶ 6 into means-plus-function language.

We disagree. While TriMed did use the word "means" in its amendment, its attorney remarks accompanying the amendment indicate that it intended for holes by themselves to constitute structure sufficient for allowing pins to slide axially through without compressing the fracture and stabilizing the pin from displacement across the plane of the plate. As the remarks put forth:

> The invention provides for stabilization of the end of the pin projecting from the fractured bone fragment without compromising the securing of the fractured bone segment to the stable bone segment without compression at the fracture. This is achieved by utilization of the pin plate 1 which has holes at one end portion for being fixed to stable bone while the opposite end has holes for engaging the protruding end of the pin, so as to prevent displacement of the protruding end of the pin in the plane of the pin plate and wherein the hole provides means for allowing the pin to slide axially in the hole in the pin plate but preventing compression across the fracture.

Nowhere in those remarks does TriMed suggest the importance of any structure in addition to holes, as Stryker would have us believe. See Cole v. Kimberly-Clark Corp., 102 F.3d 524, 531 (Fed. Cir. 1996) (explaining that the claim drafter's "perfunctory addition of the word 'means' did nothing to diminish the precise structural character" of the claim limitation). The prosecution statement does not even suggest that structure in addition to holes is required.

For the foregoing reasons, the claim language at issue recites sufficient structure on its face for performing the claimed functions, and therefore, contrary to the district court's interpretation, does not involve a means-plus-function limitation.

II.

We review the district court's grant of summary judgment without deference, reapplying the same standard required of the court below. Lacavera v. Dudas, 441 F.3d 1380, 1382 (Fed. Cir. 2006). Summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Stryker's motion for summary judgment of noninfringement was premised solely upon reading the claim language at issue as a means-plus-function limitation. Having properly construed the relevant claim language as falling outside the ambit of § 112 ¶ 6, we hold that Stryker has failed to demonstrate that there is no genuine issue of material fact that its accused devices do not infringe on the '839 patent. By Stryker's own admission, the structural limitation of holes in claim 1 is certainly present in its accused devices.[3]

Moreover, TriMed has adduced enough evidence to establish, at minimum, a genuine issue of material fact as to whether Stryker's accused devices perform the claimed functions. TriMed submitted a declaration from Dr. Leon Benson, an orthopedic hand surgeon, which stated that the holes in Stryker's accused devices perform both claimed functions based on his review of x-rays of the implanted Stryker plates and Stryker's operative technique manuals. TriMed also submitted a declaration from Dr. Robert Medoff, an orthopedic hand surgeon and the inventor behind the '839 patent, that stated that, based on an analysis of a product sample of Stryker's plates and its operative technique manual, pins can be slid axially through the pin holes in Stryker's

---

[3] With a side-by-side comparison of figure 5 of the '839 patent and the x-ray of Stryker's implanted plate, it is hard to imagine any significant structural differences between the two. Indeed, Stryker was unable to point out any differences on appeal, only contending during oral argument that figure 5 does not show whether the pin has been inserted through a hole or a hole with some other structure. As the proper construction of claim 1 encompasses embodiments using holes to receive pins—with or without some other structure—this argument is unconvincing.

plates such that compressive force across a fracture is avoided, and that the holes are "small enough to secure the pin from lateral movement thus stabilizing the pin from translational displacement in the plane of the plate."

Stryker's only counterargument below, which the district court adopted—that it did not supply the surgeons who were purportedly required to perform the claimed functions of the '839 patent—is wholly unpersuasive. No credible reading of the claim language requires human input to perform the functions of the pin holes in TriMed's plate. Stryker's only response on appeal—that "the accused devices do not permit the end of the pin to be locked to the pin plate"—is similarly unavailing. Locking the pin to the plate is simply not a requirement of the claim language. Thus, because the summary judgment of noninfringement is inappropriate, we reverse.

CONCLUSION

Because the claim language of the '839 patent articulates sufficient structure for performing the functions of allowing pins to slide axially through the pin plate and stabilizing said pins from movement across the plane of the plate of the claimed invention, we determine that the district court improperly interpreted the pin holes claim limitation as governed by § 112 ¶ 6. In light of the proper claim construction, the grant of summary judgment of noninfringement must be reversed. We remand for further proceedings consistent with our opinion and in view of the entire record.[4]

REVERSED AND REMANDED

---

[4] Given our holding vacating the summary judgment of noninfringement, the time for discovery ought to be reinstated as originally scheduled in this case. The seventeen days of discovery should be fully restored.